IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CAROLE L. GRAY PIZZUTO,

    Plaintiff,

v.                                                                                            Civil Action No. 5:12-cv-149

SCOTT R. SMITH, et al.,

    Defendants.

## REPORT & RECOMMENDATION

### *I. INTRODUCTION*

On October 4, 2012, *pro se* Plaintiff, Carole L. Gray Pizzuto Givens, filed a complaint in this Court, alleging that Defendants have engaged in a conspiracy to deprive her of fair access to the courts. In her complaint, Plaintiff invokes: 42 U.S.C. §§ 1981, 1983, and 1985-1988; the First and Fourteenth Amendments to the United States Constitution; and state law claims of physical and emotional distress. After the filing of the complaint, Plaintiff filed several motions, including one to disqualify the undersigned from hearing this case. The Court denied that motion and granted Plaintiffs application to proceed as a pauper. Upon summons issued by the Court, all Defendants have since filed motions to dismiss the complaint, primarily on the ground that Plaintiff has failed to state a claim for relief. A *Roseboro* notice was issued on November 30, 2012, informing Plaintiff of her right to file responsive materials to the motions to dismiss. Plaintiff filed her response to the motions on January 11, 2013. The motions are now ripe for this Court's review.

### *II. BACKGROUND*

The Givens family is no stranger to the courts of West Virginia, both state and federal. It all

1

seems to trace back to criminal charges filed against Greg Givens, Ms. Pizzuto's son and Dennis Givens' nephew.[1] Greg Given's grandfather received a retirement check from the United States Treasury when he retired as a railroad worker. While he was still alive, the grandfather authorized Greg Givens to sign those checks. However, after the grandfather's death, the Treasury continued to send a check, which Greg Givens continued to cash. The Ohio County grand jury returned an indictment against Greg Givens for violations relating to the posthumous check cashing, but before the case concluded Greg Givens was found incompetent to stand trial and unlikely to attain competency. Therefore, the charges were dismissed. After this dismissal, litigation by Greg and Dennis Givens, and Ms. Pizzuto, started, suing people from the bank and the officers involved in the criminal investigation in both state and federal court. All filings have been dismissed on the merits.[2]

The gravamen of Plaintiff's current complaint appears[3] to stem from the civil complaints against the bank and its employees mentioned above and the unfavorable dispositions in those cases, from a citizen appearance before the grand jury in Ohio County, West Virginia, and later attempts to appear before the grand jury that were denied. First, Judges Recht and Wilson issued several decisions that either dismissed, or granted summary judgment on, the previously mentioned civil complaints filed against the bank, its actors, and the officers involved. On June 22, 2011, Judge

---

[1] For a full recitation of the facts of the criminal case, *see Greg Givens v. Main Street Bank, et al.*, No. 5:08-cv-25, Doc. 296.

[2] *See* Ohio County Case Numbers 10-C-12, 10-C-42, 10-C-43, 10-C-101, 10-C-102, 10-C-103, 11-C-35 and 11-C-36; and Northern District of West Virginia cases 5:10-cv-17, and 5:08-cv-25.

[3] The Court uses the term "appears" because the complaint does not clearly set forth the allegations, and the Court has had to somewhat rely on Defendant's filings to piece together a time line and basis for the alleged constitutional violations.

Recht executed an order which imposed filing restrictions upon the Givens in Ohio County.

On September 12, 2011, Judge Recht allowed Greg Givens to appear before the grand jury.[4] At that appearance before the grand jury, Mr. Givens was successful at getting an indictment returned against Defendant Gamble. That indictment was dismissed on December 30, 2011, however, after a special prosecutor, Defendant Furbee, was appointed to the case and found that it had no merit. Judge Mazzone executed an order of dismissal in the case against Gamble. Both Judge Recht and Judge Wilson denied later attempts by the Givens to appear before the grand jury.

On September 20, 2012, Plaintiff proclaims that Defendants Smith and Gamble, local prosecutors, "gathered with a meeting of the minds, and conspired against Plaintiff by intentional conversation . . . stating with such precision 'we are winning,' and but not limited to: 'we've turned all of them (judges) against them." It further appears from the complaint that Plaintiff is accusing all of the named police officers and judges for allowing the conspiracy to continue, and Defendants Fowler and Blake of falsifying evidence. Coincidentally, on September 20, 2012, Judge Wilson entered an order granting summary judgment and dismissing the last Ohio County civil suit filed by Ms. Pizzuto against the aforementioned bank.

### III. STANDARD OF REVIEW

For a complaint to survive an inquiry pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, a complaint must contain factual allegations sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Although the Court must accept factual allegations in a complaint as true, it need not accept the plaintiff's legal conclusions. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.

---

[4] West Virginia allows such appearances before the grand jury.

2009). The complaint must have facial plausibility; thus, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Thus, to meet the plausibility standard and survive dismissal for failure to state a claim, a complaint must offer more than "a sheer possibility that a defendant has acted unlawfully." *Id*.

This complaint was brought by a *pro se* Plaintiff, and it is well established that deference is afforded to *pro se* complaints. *See Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978) (finding that a District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965) (finding that a *pro se* plaintiff should be given an opportunity to particularize potentially viable claims). A *pro se* complaint may therefore be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (internal quotation omitted). Where a *pro se* complaint can be remedied by an amendment, however, the District Court may not dismiss the complaint with prejudice, but must permit the amendment. *Denton v. Hernandez*, 504 U.S. 25, 34 (1992).

## *IV. DISCUSSION*

Because there have been several motions to dismiss, the Court will address each motion in turn.

### *A. Motion to Dismiss by Judges Mazzone, Recht, and Wilson, and Julie Kreefer*

*1. The Judges*

Plaintiff's allegations against the three Judge Defendants in this case are completely conclusory in nature, and, quite frankly, hard to decipher. In Count I of the complaint, claiming a

4

First Amendment violation and conspiracy, Plaintiff asserts that the judges "have conspired and continue to conspire and to deny Plaintiff the right to report state injury and ongoing crime(s) being committed against Plaintiff, and have proceeding [sic] to further cover up such crime(s) in place of the truth, echoing the words"[sic] 'This case is going nowhere.'" Further, Plaintiff claims that the judges are maintaining "intertwined relationships" and violating their oath to uphold the laws of the state and country. Finally, Count I accuses Judge Wilson of allowing "such a conspiracy to perpetuate against the Plaintiff, without checking into the facts, and evidence fixed in a [sic] extrajudicial process beforehand . . . to the direct and proximate result and injury upon the Plaintiff."

In Count II of the complaint, Plaintiff claims that Judge Recht "so intertwined with Defendant Gamble, Fowler/Pullin, have [sic] denied Plaintiff the right to petition secured by the First Amendment . . . by introducing and issuing such decree depriving Plaintiff of her fundamental rights to the Constitution and petition by issuing such unconstitutional order or decree against the Plaintiff denying due process and access to the courts."

In Count III of the complaint, Plaintiff claims that her right to petition the courts, right to access the courts, and right to due process, have all been violated by the judges when, in late 2011 and early 2012, the judges denied Plaintiff's request to appear before the grand jury. In Count IV, Plaintiff invokes the Equal Protection Clause and Section 1983, claiming that the judges "have unconstitutionally deprived Plaintiffs of the equal protection of the law." Finally, in Count V, Plaintiff claims that the aforementioned acts have resulted in physical and emotional distress.

The Court finds that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521. Not only are the allegations devoid of any factual basis which would give rise to a claim for relief, but judges are shielded from

5

lawsuits for acts undertaken from the bench. For nearly a century and a half, the Supreme Court of the United States has recognized judicial immunity as a firmly rooted principle of law that shields judicial officers from civil suit for actions taken in the exercise of their judicial functions, holding that "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself. *Bradley v. Fisher*, 80 U.S. 335, 347 (1872).

In *Bradley*, the Supreme Court further held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id*. at 351. In fact, the bar of judicial immunity can only be overcome in two circumstances. First, a judge is not immune from liability for their non-judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 360 (1978). Second, a judge is not immune for actions, though judicial in nature, were taken in complete absence of all jurisdiction. *Id*. at 356-57. To determine whether an act is judicial, a court should examine the nature of the act itself. *Id*. at 362. Specifically, the court should determine whether the act complained of is a function normally performed by a judge. *Id*.

Here, even taking the most liberal view of Plaintiff's complaint, no set of facts could give rise to relief because the judges were acting in their official capacity. On all of the dates where Plaintiff alleges a violation of law has occurred, the judges have entered orders, granted motions, or otherwise ruled against Plaintiff. The judges have attached those orders and opinions as exhibits to their motion to dismiss. Clearly, these acts are judicial and nature and are clearly within their respective jurisdiction. Accordingly, the judges motion to dismiss (Doc. 22) should be **GRANTED**.

*2. Julie Kreefer*

Ms. Kreefer is the court reporter for Judge Wilson. In Count III of the Complaint, Plaintiff alleges that, on June 13, 2011 and February 13, 2012, Defendant Kreefer "denied Plaintiff access to justice and to the courts, through corrupt influence and by skewing the record of the court making said record full of inaccuracies." The Court assumes that Plaintiff is accusing Ms. Kreefer of falsifying a transcript of a court proceeding,[5] but Plaintiff falls far short of pleading how Ms. Kreefer falsified a transcript, or how she was otherwise affected by this alleged falsity. Accordingly, the motion to dismiss by Ms. Kreefer (also Doc. 22) should be **GRANTED**.

***B. Motion to Dismiss by Officers Robinson and Zimmerman***

Similar to the Counts against the judges, Plaintiff has, at best, made conclusions of law as to the actions of these Defendants, with one exception. In Count I, Plaintiff claims that the officers maintained an "intertwined relationship" with the other defendants, and have conspired against Plaintiff to prevent her from reporting injuries and crimes. There are no facts set forth to substantiate this claim, only the claim itself. In Count III, Plaintiff claims that crimes occurred under the "watch and jurisdiction" of the officer Defendants, and that the officers, "under color of law denied Plaintiff Federally [sic] protected right." Again, no facts are set forth. Similar legal conclusions are made in Count IV, alleging that the officers have "unconstitutionally deprived Plaintiffs of the equal protection of the law," and in Count V, alleging that the officers have caused Plaintiff physical and emotional distress.

The only inkling of a potentially valid claim comes in Count III of the complaint, which alleges that

---

[5] Defendant Kreefer, in her motion to dismiss, acknowledges that on these two dates transcripts from scheduling conferences were made.

> Officer Zimmerman in conspiracy with Defendant Gamble, leaked internal investigative forensic reports supplied in confidence to the West Virginia State police officer Weaver, to foster favor and provide advantage to eventual criminally indicted to affect the course of justice in favor of Defendant Keith C. Gamble, under color of law, and in violation of Plaintiff's Federal and state civil and constitutional rights and privileges named herein.

Here, Plaintiff has pled some factual basis, albeit vaguely, that is plausible enough to survive the hurdle of a motion to dismiss because 42 U.S.C. § 1983 provides an avenue of relief for a Plaintiff asserting a claim for constitutional violations perpetrated by a officer acting under color of law. It appears from the allegation, and taken in view of the circumstances of the entire case, that Plaintiff is alleging that, after obtaining a returned indictment from the grand jury against Keith C. Gamble, officer Zimmerman somehow interfered with the evidence that Plaintiff had against Gamble, which ultimately led to the dismissal of that case.[6]

Again, in ruling on motions to dismiss, the district court should give wide latitude to the *pro se* litigant and complaint. While there may be no merit to the claim, Plaintiff is entitled to discovery to aid in developing the claim. Accordingly, it is recommended the Motion to Dismiss ( Doc. 24) should be **GRANTED IN PART** and **DENIED IN PART**, in that Defendant Robinson should be dismissed from the lawsuit, and Defendant Zimmerman should not, providing that Plaintiff can set forth further factual allegations that can substantiate her claim for relief.

### *C. Motions to Dismiss by Scott R. Smith, D. Luke Furbee, and Toni VanCamp*

Defendant Smith is the prosecuting attorney in Ohio County, West Virginia, and Defendant

---

[6] The Court will note that the nearly identical Complaints filed by the Givens and Pizzuto in the related cases–5:12cv145, 5:12cv149, and 5:12cv155–are facially inconsistent. For instance, in 5:12cv145 Dennis Givens claims that Officer Weaver was the one that leaked internal investigative forensic reports, with identical wording as is quoted above, and even though Officer Zimmerman was named in that complaint there were no allegations that he mishandled the reports. Quite the opposite, Carol Pizzuto claims that it was Officer Zimmerman that mishandled the reports and Officer Weaver is not even a named defendant.

Furbee is the prosecuting attorney in Tyler County, West Virginia. Mr. Furbee was appointed as the special prosecuting attorney in the case that Greg Givens initiated against Defendant Gamble. Toni VanCamp acted under the direct supervision of Special Prosecutor Furbee as a Victim's Advocate. Again, in the allegations against these Defendants, Plaintiff has pled *no* facts to substantiate her conclusions of law. Moreover, even if Plaintiff were able to provide some facts, it appears from the context of this case that all facts would lead to acts committed while employed as prosecutors of the state. As are judges, state prosecutors and their staff, are entitled to immunity.

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court of the United States held that, "in initiating a prosecution and in presenting the State's case, [a] prosecutor is immune from a civil suit for damages under § 1983." *Id*. at 431. The Court made clear that this immunity is absolute because "qualifying a prosecutor's immunity would disserve the broader public interest [by] prevent[ing] the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id*. at 427-28. Finally, in "delineat[ing] the boundaries of [its] holding," the Court explained that this absolute immunity protects a prosecutor's activities that are "intimately associated with the judicial phase of the criminal process." *Id*. at 430. This immunity extends into discretionary decisions of whether and when to prosecute. *See Lyles v. Sparks*, 79 F.3d 372 (4th Cir. 1996); *Ehrlich v. Giuliani*, 910 F.2d 1220 (4th Cir. 1990). Further, staff of a prosecutor, acting in their official capacity, are also afforded this absolute immunity. *See e.g. Hill v. City of New York*, 45 F.3d 653 (2nd Cir. 1995).

Here, Plaintiff has pled no facts to implicate the two prosecutor Defendants, or Ms. VanCamp, in any violation of law. Moreover, even if there were some factual basis, the Court is confident that it would assert that Defendant Smith failed to get involved in the saga that has

9

developed in Ohio County, that Defendant Furbee should not have concluded the case against Gamble was unwarranted, and that Defendant VanCamp was not fulfilling her role as a victim's advocate. These actions would clearly fall under the absolute immunity afforded to prosecutors and their staff. Accordingly, the prosecutor Defendants' Motions to Dismiss (Docs. 26 & 28) should be **GRANTED**.

### *D. Motions to Dismiss by Attorneys Fowler and Gamble, and Kenneth W. Blake*

These Defendants are included in all of the other conclusory statements set forth thus far, including the state law claims for physical and emotional distress, and for the reasons previously stated those claims are insufficient to survive the plausibility test of a motion to dismiss. In addition to the inclusion of these Defendants in those statements, Plaintiff also accuses these Defendants of denying him access to the courts and violating his due process, claiming that the three Defendants are

> conspir[ing] to deprive Plaintiff of his right, privilege, or immunity to petition the courts, and free access to due process by accepting bribery and/or consideration bribes resulting from Defendant Gamble and Fowler/Pullin, acting in concert in an "intertwined relationship" with other named Defendant(s) to falsify records and alter forensic evidence falsely prepared against Plaintiff to pervert and obstruct the proper course of justice during the course and events of Plaintiffs claims.

Although the Plaintiff has provided some facts in this allegation, the law that Plaintiff asserts she is entitled to relief under does not allow such an action. First, Plaintiff alleges violations of the Fourteenth Amendment, both the Due Process and Equal Protection Clauses, which clearly applies to only state action. *See Shelley v. Kraemer*, 334 U.S. 1, 13 (1948); *see also Cooper v. Aaron*, 358 U.S. 1, 11 (1958) ("Individual invasion of individual rights is not the subject-matter of the amendment."); *Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959, 966 (4th Cir. )

("[P]rivate conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it."). These three named Defendants are private actors and not subject to suit under the Fourteenth Amendment.

Further, in Plaintiff's assertion of this Court's jurisdiction, Plaintiff alleges that Defendants have violated the Civil Rights Act, the remaining parts of which are codified at 42 U.S.C. §§ 1981-83, and § 1985, but does not allege which Section of the Act Defendants have violated in the facts provided in the listed Counts. Application of any of these provisions has no merit. First, §§ 1981 and 1982 prohibit racial discrimination in the making of contracts, in employment, property rights, and in other enumerated areas. The complaint does not contain any allegations in the claim or otherwise to substantiate a claim under either Section.

Section 1983 prohibits the deprivation of any rights guaranteed by the Constitution or law by any person acting under color of state law. Thus, to establish a claim under § 1983, Plaintiff must show that: (1) Defendants deprived her of a right guaranteed under the Constitution or laws of the United States, and (2) that the deprivation occurred under color of a statute, ordinance, regulation, custom, or usage of the State. *See Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001). The under color of law element is equivalent to the state action required by the Fourteenth Amendment, *id.*, and "may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351 (1974)). Again, Plaintiff has not alleged anything that would implicate state action, or private behavior that can be imputed to state action.

Finally, Section 1985, the Ku Klux Klan Act, does provide for a remedy for purely private action by prohibiting conspiracies to deprive a person of civil rights. Section 1985(1) forbids conspiracies to prevent an officer from performing her duties, but the complaint does not allege anything that would implicate this Section. Similarly, there is no implication of § 1985(2), which forbids conspiracies aimed at intimidating a party, witness, or juror, to a court proceeding. Thus, only § 1985(3) remains, which, in relevant part, deals with conspiracies aimed at depriving persons of certain rights or privileges.

In order to prove a conspiracy in violation of § 1985(3), "a plaintiff must show, *inter alia*, (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (internal citations omitted). Plaintiff alleges in her complaint that these Defendants have conspired against her to prevent her accessing the courts, and have violated her rights to due process. Plaintiff does not allege that some racial or other class-based animus lay behind the alleged conspirators' actions. Accordingly, Plaintiff's claims to violations of the Civil Rights Act are without basis

The last cause of action alleged against these Defendants is a violation of the First Amendment. However, the Court can glean no First Amendment claims from Plaintiff's complaint. The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Further these provisions are binding on the states

through the Due Process Clause of the Fourteenth Amendment. *See Comm. for Pub. Ed. & Rel. Liberty v. Nyquist*, 413 U.S. 756 (1973). Here, Plaintiff has not asserted any law passed by Congress or the state which restricts her First Amendment rights. Moreover, she has not pled any facts that would implicate private activity that could be deemed "state action." *See Jackson v. Met. Edison Co.*, 419 U.S. 345, 349 (1974). Accordingly, the First Amendment complaint cannot proceed.

Because either no set of facts can give rise to the alleged violations, or the law invoked by Plaintiff does not provide a remedy, the lawyer Defendants' and Defendant Blake's Motion to Dismiss (Doc. 20) should be **GRANTED**.

## *V. CONCLUSION & RECOMMENDATION*

Affording Plaintiff the most liberal construction given to *pro se* complaints, the Court recommends the following:

1. The judge Defendants' Motion to Dismiss (Doc. 22) be **GRANTED** because Plaintiff has not pled sufficient facts to create a plausible claim for relief, and because the judges are entitled to absolute immunity.

2. The officer Defendants' Motion to Dismiss (Doc. 24) be **GRANTED IN PART** and **DENIED IN PART**, in that Defendant Robinson is dismissed because Plaintiff has not pled any facts to create a plausible claim for relief from this Defendant. However, Plaintiff has pled some facts with respect to Defendant Zimmerman. Thus, he is entitled to proceed with discovery from Defendant Zimmerman.

3. The prosecutor Defendants' Motion to Dismiss (Docs. 26 & 28) be **GRANTED** because Plaintiff has not pled sufficient facts to create a plausible claim for relief, and because the prosecutors and their staff are entitled to absolute immunity.

4. The lawyer Defendants' and Defendant Blake's Motion to Dismiss (Doc. 20) be **GRANTED** because no set of facts could give rise to the violations of law alleged.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge of record. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the pro se plaintiffs by certified mail, return receipt requested, to their last known address as reflected on the docket sheet, and to any other counsel of record, as applicable.

DATED: January 28, 2013 /s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE