IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CAROL L. GRAY PIZZUTO,

       Plaintiff,

v.                                            Civil Action No. 5:12-cv-149

SCOTT R. SMITH, et al.,

       Defendants.

**REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT BE GRANTED AND PLAINTIFF'S MOTION FOR LEAVE
TO AMEND BE DENIED & ORDER ON PENDING NON-DISPOSITIVE MOTIONS**

## I. INTRODUCTION

A complete history of this case is detailed in the Memorandum Opinion and Order issued by Judge Stamp on July 1, 2013.[1] As a result of that Order, all but one of the twelve original Defendants were dismissed from the case. Only Defendant Zimmerman remains as a Defendant. The parties entered their Joint Rule 26(f) Conference Report on September 6, 2013. Defendant filed his Rule 26(a) disclosures on September 20, 2013, and Plaintiff filed her disclosures on September 23, 2013. On October 21, 2013, Judge Stamp entered a scheduling order in this case setting a discovery deadline of April 8, 2014.[2] Currently, there are several motions pending before the Court.

## II. DISCUSSION

### A. Deposition Motions

On November 1, 2013, the undersigned entered an Order denying Plaintiff's motion to

---

[1]Dkt. No. 107.

[2]Dkt. No. 143.

compel Defendant's deposition.[3] In that order, the undersigned found that "allowing Defendant to depose Plaintiff first will narrow the issues and define the scope of allowable discovery in this case going forward." Additionally, the undersigned directed Plaintiff to provide Defendant with three dates on which she was available to be deposed. The order also provided that "[a]fter Plaintiff's deposition is properly noticed, the parties shall schedule the depositions that Plaintiff wishes to conduct, on dates following Plaintiff's deposition." Plaintiff partially complied with this order by providing dates of availability to Defendant. On November 11, 2013, Defendant noticed Plaintiff's deposition for November 19, 2013. On the notice, Defendant mistakenly indicated that the deposition would be held pursuant to the West Virginia, rather than the Federal, Rules of Civil Procedure. On November 15, 2013, Plaintiff filed objections to Defendant's notice because of this error.[4] However, on November 18, 2013, Defendant's counsel emailed and faxed Plaintiff a letter regarding her objections and assured Plaintiff that "the reference to the West Virginia rules was a typographical error" and that he "fully understand[s] that this action is governed by the Federal Rules of Civil Procedure."[5]

Despite her objections, Plaintiff attended her deposition on November 19, 2013. At the outset, Defendant's counsel reiterated that the notice contained a typographical error as evidenced by the following exchange:

> Q: Okay. One other thing I wanted to clear up. I'm going to hand you what we'll mark as Exhibit B. I would like you to take a look at it. I believe it's the Notice of Deposition for today for you in this case. I wanted to clear up one thing about it. First, take a look and let me know when you're done. Take all the time you need to look over the whole document, and I'll ask you a couple of quick questions about

---

[3]Dkt. No. 151.

[4]Dkt. Nos. 154 & 155.

[5]Dkt. No. 160-1.

it.

A: Yes, I read it.

Q: And do you recognize that to be the Notice of Deposition that I filed in the case,--

A: Yes.

Q: – for today?

A: Yes.

Q: And I noted that – I believe that it was on Friday you filed an objection to that Notice, pointing out to me that I had cited the West Virginia Rules of Civil Procedure; is that right?

A: Yes.

Q: And to be clear and to make sure there's no misunderstanding, I appreciate you pointing that out to me. We all understand that we're in Federal Court and that the Federal Rules of Civil Procedure apply, fair?

A: Yes.

Q: Very good. Was there anything else about the Notice that you objected to other than the reference to the West Virginia Rules of Civil Procedure?

A: No.

Q: Very good. I wasn't sure and I wanted to make sure that you had the chance to say whatever it was that you needed to say about the Notice itself. I'm glad we cleared that up.

Dkt. No. 160-2, p. 3-5. The deposition proceeded as scheduled. At some point, Plaintiff agreed to

dismiss her complaint against Defendant, but asked if she could go to lunch first. The following

exchange then took place:

Q. Absolutely. It is up to you. If you would like to take some lunch before we go do that, we will take lunch and go do that before.

A. Okay.

Q. However, before we break for lunch, I want to reiterate what we've agreed. We've agreed that after we come back from lunch that we're going to go down to the clerk's officer in the Federal Court and you're going to ask them to dismiss Defendant Zimmerman from the case; is that correct?

A. Yes.

Q. And to aid in that process, while you're at lunch, I will prepare an agreed order between you and I that states that the parties, you and I–well, you and me on behalf of Trooper Zimmerman, agree that based on the deposition that took place today, Trooper Zimmerman will be dismissed as a defendant and, accordingly, we ask the Judge to go ahead and do that. If both of us sign that and both of us bring that to the clerk's office for filing, then we'll come back here, make that signed order part of the deposition record,–we'll keep a copy of it and we'll make it part of the record–and then we'll do a few wrap-up things and we'll be done. Is that okay?

A. Yes. Do I get a copy? Will I get a copy?

Dkt. No. 159-7, p. 125-26. After further discussing the mechanics of the dismissal order, the parties

broke for lunch:

Q. So with that being said, are we–is the plan I discussed before acceptable, we'll take lunch and then go down to the courthouse?

A. I don't know what to do. That's the right thing to do. Yes, it's the right thing to do.

Q. Okay. Then we will go do that. Why don't you take lunch. I will be here working on that order and we will go from there. How long do you think you want to take?

A. Probably an hour.

Q. That's fine. It's about 1:12, so let's plan on being back here about 2:12. Okay?

A. Okay. That would be fine.

MR. SOLOMON: Very good. With that, we'll go off the record for lunch.

PLAINTIFF: Okay.

MR. SOLOMON: Thank you so much.

PLAINTIFF: And do I leave my papers here? Might as well.

MR. SOLOMON: That's completely up to you.

Dkt. No. 159-7, p. 129-30.

At 2:45 p.m., Plaintiff had not returned from lunch, so Mr. Solomon went back on the record and left Plaintiff a voice mail asking that she call him immediately. At 3:28 p.m., Plaintiff had still not returned, and Mr. Solomon left her voice mail advising that if he did not hear from her by 3:45 p.m., "we will adjourn the deposition and we'll then need to make the Court aware of what occurred this afternoon and seek the Court's involvement." At 3:45 p.m., having still not heard back from Plaintiff, Mr. Solomon stated on the record:

> As stated it's now shortly after 3:45 and Ms. Pizzuto has not returned. We attempted to call her cell phone number twice, left messages both times advising her that we were waiting for her return. And the second one advised that if we did not hear from her by 3:45, or if she did not return by 3:45, that we would adjourn the deposition and raise the issue with the Court. We've not heard from Ms. Pizzuto, she's failed to return for the remainder of her deposition. We are going to suspend the deposition and leave it adjourned for today and reserve the right to continue the deposition, to seek appropriate relief from the Court and to otherwise bring the issue of today's deposition to the Court's attention. That's it for today.

Dkt. No. 159-7, p. 132-33.

Two days later, on November 22, 2013, Plaintiff filed a motion to compel Defendant to provide deposition dates.[6] Plaintiff filed a second motion to compel on March 5, 2014.[7] Plaintiff's motions largely repeat her previous claims that Defendant refuses to give her his dates of availability despite repeated requests–allegations the undersigned already found to be unsupported. Plaintiff also contends that she was duly dismissed from her deposition; and, therefore, she is in full compliance

---

[6]Dkt. No. 157.

[7]Dkt. No. 174.

with this Court's order. She claims that it is now Defendant's turn to provide his dates of availability as ordered by this Court.[8] The undersigned disagrees.

The previous deposition order clearly indicates that Defendant's deposition will be conducted *only after* Plaintiff's deposition has taken place. Simply put, Plaintiff's deposition is not complete because Plaintiff left before it was over. She was not "duly dismissed from [her] deposition...by Deva A. Solomon," as she claims. In order to believe Plaintiff's version of the events as it pertains to her motions to compel,[9] the Court would have to believe that Mr. Solomon dismissed Plaintiff from the deposition, but in an effort to avoid having his client deposed, nonetheless created an elaborate ruse involving a forged deposition transcript and fraudulent filings with this Court. This the Court simply cannot do based on Plaintiff's unsupported and contradictory allegations. Plaintiff's version of the events is simply not credible. Accordingly, Plaintiff's motions to compel Defendant's deposition are **DENIED**.

Plaintiff filed several other motions related to her deposition. First, on December 2, 2013, Plaintiff filed a motion to strike her deposition transcript. Plaintiff contends that she did not have notice of her deposition because she did not receive the amended notice changing the typographical error discussed above until November 19, 2013, the date of her deposition. This argument lacks merit. As noted above, Defendant made every effort to correct the typographical error and received assurances from Plaintiff that she understood the deposition was proceeding under the Federal Rules

---

[8]Plaintiff also likens her situation to Dennis Givens's case wherein the undersigned recently rejected Defendant's request for a protective order precluding his deposition altogether because of an alleged weak case. Unlike that case, here, Plaintiff has not submitted to a deposition first. Additionally, in Dennis Givern's case, the Court declined to decide that his deposition was unnecessary because no dispositive motions were before the Court. Here, in contrast, Defendant's summary judgment motion is before the Court. Accordingly, Plaintiff's situation is vastly different than Dennis Givens's case.

[9]The Court notes that in other motions and filings, Plaintiff claims that she "escaped" the deposition in fear of her life because of Mr. Solomon's bullying behavior. She also claims elsewhere that she was told by Mr. Solomon to meet at the court house after lunch, but that Mr. Solomon never showed up there. She also claims that she was having chest pains and stomach problems, facts which she revealed to Mr. Solomon and which he ignored.

of Civil Procedure. Plaintiff's arguments to the contrary are frivolous.

Although not specifically raised as a ground in her motion to strike, Plaintiff raises the issue of the inaccuracy of the deposition transcript multiple times in various pleadings, including attacking the deposition transcript in opposing Defendant's summary judgment motion. She states that "during the entire interview with Defendant Attorney Deva A. Solomon, I was given the impression that I was being stalked, as well as my entire family, and any guests to my home by Defendant Zimmerman." She also claims that Mr. Solomon "acted on behalf of Defendant Zimmerman as an unmitigating bully and off the record intent on my immediate civil arrest or demise," and that Mr. Solomon told her that if she did not go to the court house to dismiss the complaint willingly, he would forcibly take her there under arrest. Plaintiff also alleges that Mr. Solomon altered the deposition transcript in an effort to make it appear as if Plaintiff made damaging admissions. Plaintiff states that "Mr. Solomon began striking matters that we discussed, instructing the transcriptionist to delete the complete, official record, key matters stricken...and trash and scratch things pertaining to the record." She claims that Mr. Solomon also tricked her into making admissions against her will by showing her documents too quickly. Finally, she contends that because she was never informed of the 30-day notice requirement to correct her deposition transcript, any copy of it should be deemed inadmissible by this Court. Defendant filed a certified copy of Plaintiff's transcript signed by Ms. Shutek, the certifying official.[10] Additionally, Defendant filed excerpts of the deposition transcript in support of his motion for summary judgment and motion for sanctions.

The Court finds that Plaintiff's objections lack merit for several reasons. First, Plaintiff's fantastical allegations regarding Mr. Solomon's conduct are simply not credible. The Court believes

---

[10]Dkt. No. 183.

that Plaintiff made several damaging admission during her testimony and agreed to dismiss her complaint against Defendant, but then had second thoughts once she was at lunch, and she simply went home without finishing her deposition. It is not lost on the Court that Plaintiff's allegations against *this* Defendant stem from a strikingly similar incident in which Plaintiff agreed with Mr. Gamble, in front of Judge Wilson, to dismiss her state court case[11] against Mr. Gamble and others, but then presumably changed her mind and denied having ever agreed to dismiss. Subsequently, Plaintiff filed a motion seeking to hold Mr. Gamble in contempt for allegedly denying the Court's order not to prepare a dismissal order for Plaintiff's signature.[12] However, as Judge Wilson stated in his Order Denying Plaintiff's Motion: "The facts known to the Court are as follows: The parties appeared for a scheduling conference on April 18, 2011. At that hearing Ms. Pizzuto expressed that she was not interested in pursuing her case any further. The Defendant, an attorney, offered to prepare the proposed Order to present to the Court to dismiss the action. The Court did not conduct the scheduling conference because the Plaintiff had indicated her interest in no longer pursuing the matter and, therefore, no Scheduling Order was produced by the Court."[13] Similarly, here, Plaintiff attempts to rewrite events to fit her narrative–no matter how farfetched her version might be. It simply defies credibility that Mr. Solomon would threaten and coerce Plaintiff, force a court reporter to commit perjury, and then doctor Plaintiff's deposition transcript before presenting it to the Court as a certified copy. Plaintiff has presented nothing other than self-serving allegations that the deposition transcript is inaccurate or that Mr. Solomon's conduct was inappropriate.

---

[11] Civil Action No. 10-C-101 in the Circuit Court of Ohio County, West Virginia

[12] Dkt. No. 184-1, p. 19. In fact, it is this incident that Plaintiff reported to Defendant in an effort to have Mr. Gamble prosecuted criminally for allegedly forging her name on the motion to dismiss. As Defendant's subsequent report indicates, upon interviewing Mr. Gamble and receiving documentation from Judge Wilson, Defendant found the claims unfounded.

[13] Dkt. 184-1, p. 17-18.

Finally, Plaintiff's argument regarding her failure to review and sign the deposition transcript lacks merit. Rule 30(e)(1) provides that "[o]n request by the deponent...before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript is available in which to (A) review the transcript and; (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed.R.Civ.P. 30(e). Thus, an "absolute prerequisite to amending or correcting a deposition under Rule 30(e)" is that the deponent request review of the deposition before its completion. *E.B.C., Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 266 (3rd Cir. 2010); *Agrizap, Inc. v. Woodstream Corp.*, 232 F.R.D. 491, 494 (E.D.Pa.2006) (barring witness from changing deposition transcript for failure to request review before completion of the deposition). Only if the deponent has properly requested review may she submit changes to the deposition transcript within thirty days after being notified by the officer that the transcript is available for review.

Here, there is no indication that Plaintiff requested the opportunity to review the transcript. The certificate signed by Ms. Shutek does not state that Plaintiff requested review.[14] Moreover, even if Plaintiff had requested the opportunity to make corrections to her deposition testimony, the changes Plaintiff contemplates go far an beyond what Rule 30(e) authorizes. *See Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir.2000) ("We also believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'");

---

[14]Dkt. No. 183-1 p. 36. Plaintiff appears to argue that it was Mr. Solomon's or Ms. Shutek's responsibility to inform her of her right to request review. Without addressing this contention, the Court notes that had Plaintiff not left her deposition before it was completed, it is likely that the procedure would have been more fully explained to her by Mr. Solomon, in light of the very thorough (and polite) way that Mr. Solomon explained all other aspects of the deposition process to Plaintiff.

*Touchcom, Inc. v. Bereskin & Parr*, 790 F.Supp.2d 435, 465 (E.D.Va.2011) ("Rule 30(e)...'cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.'") (quoting *Burns v. Bd. of County Com'rs of Jackson Cnty.*, 330 F.3d 1275, 1282 (10th Cir.2003)). Significantly, "[e]ven jurisdictions that permit broad substantive changes usually disallow changes tendered after a motion for summary judgment has been filed." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.,* 277 F.R.D. 286, 296 (E.D.Va. 2011) (collecting cases); *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F. 3d 253, 267-68 (3rd Cir. 2010) ("As a general proposition, a party may not generate from whole cloth a genuine issue of material fact (or eliminate the same) simply by re-tailoring sworn deposition testimony to his or her satisfaction.").

The Court finds that Plaintiff made several damaging admissions while testifying under oath and now seeks to rewrite her testimony to undo those admissions. However, Plaintiff's allegations are conclusory and self-serving. Plaintiff provides neither specific examples of misrepresentations contained in the transcript nor evidence supporting her allegations. Accordingly, the Court **DENIES** Plaintiff's motion to strike her deposition transcript and will consider the portions of the deposition testimony cited in Defendant's motion as authorized by the Federal Rules of Civil Procedure.

### B. Plaintiff's Motion for Leave to Amend Complaint (Doc. 166)

In her motion, Plaintiff seeks to file an amended complaint in order to add two defendants, J.E. Dean ("Dean") and Sergeant Adams ("Adams"), both police officers. Plaintiff contends that leave to amend should be granted because "it will clarify the dispute between the parties and will not cause undue prejudice." Plaintiff attached her proposed amended complaint to her motion. Other than the addition of the following new paragraphs, the amended complaint is identical in every

respect to Plaintiff's original complaint:

> Defendant Dean, Adams denied Plaintiff, or caused Plaintiff to be subjected, unlike any citizen of the United States or other person within the jurisdiction thereof to the deprivation the Plaintiff of the rights, privileges, or immunities secured by the Constitution and laws of the United States in the reporting of crimes. And so, has exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law by such actions name in Counts I through V, contained herein.

> Acting under "color of law" and agent for a governmental agency that receives state and federal funds, Defendant Dean, Adams, Branham[15] is mandated to comply with federal and state laws, including due process and the First through Fourteenth Amendments to the United States Constitution.

> According to Defendant Dean, Adams, law enforcement Procedural Operations Guidelines, Amendment rights require that Defendant Dean, Adams, Branham not interfere with due process and the equal protection of law, and because of that, Defendant Dean, Adams, is required to provide equal access to the reporting, law enforcement of crimes. Consequently, as a matter of official policy, practice, custom, and/or procedure, Defendant Dean, Adams, has intentionally dedicated his expressive conduct by breach of duty to the laws, statutes and ordinances affective to the civil and constitutional rights to be free from molestation of the reporting of all crimes and misdemeanors affecting the Plaintiff, namely color of federal and state laws, without bias, favoritism, or conflict of interest.

> During the times and dates cited herein, Defendant Dean, Adams, Branham have denied the Plaintiff, and targeted the Plaintiff, as well as her expert(s), that have reason to believe that the added Parties are

---

[15]Although Plaintiff includes the name "Branham" in several of these new paragraphs of her amended complaint, it is entirely unclear from Plaintiff's proposed amended complaint who "Branham" is because Plaintiff did not list him or her as a new party. The Court notes that on the same day Plaintiff filed her motion to amend, Plaintiff Dennis Givens also filed a motion to amend in companion case 5:12-cv-145 seeking to add D.L. Robinson and Sergeant Branham as parties to his original complaint. Other than containing the names Robinson and Branham, rather than Dean and Adams (and sometimes Branham), the five new paragraphs set forth in Dennis Givens's proposed amended complaint are *identical in every respect* to the five new paragraphs set forth in Pizzuto's proposed amended complaint. *See* 5:12-cv-145, Dkt. No. 145-1, p. 7–8. In the same vein, Plaintiff Greg Givens also filed a motion to amend on January 31, 2014, in companion case 5:12-cv-155, seeking to add new parties Dean, Adams, Branham, and Weaver. Again, other than containing the names Dean, Adams, Branham, and Weaver, Greg Givens's proposed amendment is *identical in every respect* to the proposed amendments of Pizzuto and Dennis Givens. *See* 5:12-cv-155, Dkt. No. 162-1, p. 10-12. It appears to the Court that all three Plaintiffs merely seek to add these "new" Defendants in order to make all three complaints identical. This serves to bolster the Court's finding, discussed below, that Plaintiff utterly fails to state a claim against Dean and Adams.

PART AND PARCEL of the allegations herein, and complicate with the remain [sic] parties to this suit, and contained within the Plaintiff's AMENDED COMPLAINT.

Defendant Dean, Adams, Branham have denied Plaintiffs' access to a public forum to express their civil and constitutionally-protected views, and denial of victims rights under color of law, and biased the content of a clear and proper criminal investigation expressed by Plaintiff, and extreme restriction on Plaintiff, that at all times named herein, placing Plaintiff in great harm, and risk of further injuries, loss of companionship, all physical and emotional strain and damage.

Defendant argues that Plaintiff's proposed amendment is futile because it fails to state a claim upon which relief can be granted. Additionally, Defendant contends that the proposed amendment "is a bad faith attempt to renew claims against Defendants that have already been dismissed."

Under Federal Rule of Civil Procedure 15, a "court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). "The law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986)). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: '[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir.2008)). Thus, a proposed amendment that would clearly be subject to immediate dismissal through a 12(b)(6) motion to dismiss is futile and leave to amend should be denied. *See Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir.1986) (leave to amend should be denied "when the proposed amendment is clearly insufficient or frivolous on its face");

*Jones v. N.Y. Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir.1999) (amendments subject to "immediate dismissal" for failure to state a claim are futile). Moreover, where a plaintiff seeks to amend a complaint after the defendant has filed a motion for summary judgment, a more stringent standard applies to the determination of whether leave to amend should be given. *See, e.g., Eisenberg v. Wall*, 607 F.Supp.2d 248, 257-58 (D.Ma. 2009). "[W]here plaintiff files a motion to amend after defendant has moved for summary judgment the motion to amend will not be granted unless the party seeking amendment can show not only that the proposed amendment has substantial merit[,]...but also come forward with substantial and convincing evidence supporting the newly asserted claim." *Carey v. Beans*, 500 F. Supp. 580, 582 (E.D. Pa. 1980) *aff'd*, 659 F.2d 1065 (3d Cir. 1981) (internal citations and quotations omitted).

The undersigned agrees that Plaintiff's proposed amendment would be futile because it clearly fails to state a claim, and it would undoubtedly be subject to immediate dismissal under Rule 12(b)(6). *See Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (holding that futility of an amendment is assessed under the standard of Fed.R.Civ.P. 12(b)(6)). For a complaint to avoid dismissal for failure to state a claim upon which relief may be granted, it must include factual allegations sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The Court must accept factual allegations as true, but it need not accept the plaintiff's legal conclusions. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). The complaint must have facial plausibility; thus, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Thus, to meet the plausibility standard and survive dismissal for failure to state a claim, a complaint must offer more than "a sheer possibility that a defendant has acted unlawfully." *Id.* A pro se complaint may be dismissed for

failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (internal quotation omitted).

Here, Plaintiff's allegations against Dean and Adams are completely conclusory and devoid of any factual allegations that would give rise to a claim for relief. In fact, Plaintiff's amendment does not alter in any respect the factual substance of Plaintiff's previously pled causes of action, almost all of which have already been dismissed for failure to state a claim. Plaintiff baldly asserts that Dean and Adams "denied" and "targeted" her, but offers no factual support for these allegations. Similarly, Plaintiff claims that Dean and Adams "denied Plaintiffs' access to a public forum to express their civil and constitutionally-protected views," denied her victim's rights, and "biased the content of a clear and proper criminal investigation expressed by Plaintiff." Again, there are no facts set forth to substantiate these vague and poorly-worded claims. Additionally, Plaintiff did not add either of the new defendants to any of the causes of action in her proposed amended complaint. She merely recites, verbatim, the causes of action from her original complaint and states that these "new" defendants are "part and parcel" of those prior allegations. Accordingly, the Court finds that it is "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Haines*, 404 U.S. at 521.

Moreover, even if Plaintiff's proposed amendment could survive a motion to dismiss for failure to state a claim, Plaintiff faces a more stringent standard because her motion for leave to amend came after Defendant's Motion for Summary Judgment. As noted above, under this standard, Plaintiff must "show not only that the proposed amendment has substantial merit[,]...but also come forward with substantial and convincing evidence supporting the newly asserted claim." *Carey*, 500 F. Supp. at 582. Clearly, Plaintiff's conclusory and vague allegations do not meet this heightened

standard. Accordingly, Plaintiff's Motion for Leave to Amend (Doc. 166) should be **DENIED**.

### C. Plaintiff's Motion to Retain Experts (Doc. 169)

On February 7, 2014, Plaintiff filed a Motion and Notice to Retain Experts. Attached to this motion is a list of thirteen "potential persons expected/called for expert testimony as expert witnesses," which includes numerous police and security experts and forensic document examiners. The only information provided about each expert is the expert's name and a brief description of services provided by the expert. Citing the Federal Rules of Civil Procedure and this Court's Scheduling Order, Plaintiff moves the Court to grant her leave to retain these experts. On March 11, 2014, Defendant filed a Motion to Strike Plaintiff's Motion to Retain Experts. Defendant argues that Plaintiff's motion should be construed as Expert Witness Disclosures. Defendant also contends that Plaintiff's disclosures "completely fail to comply with Rule 26(a)(2) of the Federal Rules.

To the extent Plaintiff's motion is seeking leave of Court to retain expert witnesses, the Motion is **DENIED**. Plaintiff is free to retain any expert witness she chooses as long as she complies with the procedural requirements of the local and Federal Rules. No leave of Court is required. To the extent Plaintiff's motion is intended to be an expert witness disclosure, the Court agrees that it fails to comply with Federal Rule of Civil Procedure 26, which requires much more information than Plaintiff provided. *See* Fed.R.Civ.P. 26(a)(2). However, the Federal Rules also provide a remedy for such a failure. *See* Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Thus, unless and until Plaintiff attempts to use her expert witnesses to supply evidence, Defendant's Motion to Strike is premature. Accordingly, Defendant's Motion to Strike (Doc. 177) is **DENIED**.

***D. Defendant's Motion for Summary Judgment (Doc. 164)***

Under Federal Rule of Civil Procedure 56, the Court shall grant a motion for summary judgment if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Anderson*, 477 U.S. at 247-48. The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Id*. In making this determination, the court views all underlying facts and inferences in the light most favorable to the nonmoving party. *Id*. However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. Thus, "pure speculation and unsupported assertions [will not] suffice to create a genuine issue of material fact; the nonmoving party, to defeat summary judgment, must come forward with affidavits, interrogatories, depositions, and or other admissible evidence demonstrating the existence of a genuine issue of material fact." *Blankenship v. Warren County Sheriff's Dept.*, 939 F.Supp.451, 456 (W.D.Va. 1996); *see also* Fed.R.Civ.P. 56(c). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Plaintiff brought this action alleging various civil rights violations against numerous defendants pursuant to 42 U.S.C. § 1983. However, this Court allowed this claim against Defendant to move forward based ONLY ON the allegation in Count III that Defendant, "in conspiracy with Defendant Gamble, leaked internal investigative forensic reports supplied in confidence to the West

Virginia State police officer Zimmerman, to foster favor and provide advantage to intimidate Plaintiff, and to affect the course of justice in favor of Defendant Keith C. Gamble, under color of law, and in violation of Plaintiff's Federal and state civil and constitutional rights and privileges named herein."[16] In order to prevail on her § 1983 claim, Plaintiff must show that Defendant, acting under color of state law, deprived her of "a right secured by the Constitution and laws of the United States." Although Plaintiff devotes a considerable portion of her brief on whether Defendant was acting under color of state law, there does not seem to be any dispute that Defendant was a state actor at all times relevant to the allegations in the complaint. The question then is whether Plaintiff can prove an underlying constitutional violation caused by Defendant's alleged leak of information. After thoroughly reviewing the record, and showing as much deference as possible to the *pro se* Plaintiff, it appears to the Court that Plaintiff alleges that Defendant leaked confidential documents to Mr. Gamble in order to give Mr. Gamble leverage against Plaintiff in a pending civil suit in which Mr. Gamble was named as a defendant, which violated her right to privacy and her right of access to the courts. Defendant asserts that there is no genuine issue of material fact supporting Plaintiff's claim because Plaintiff admitted in her deposition that it was Dennis Givens who gave Defendant the alleged confidential documents and that the documents neither belonged to her nor related to her.[17] The Court agrees.

---

[16]Dkt. No. 107, p. 14-16.

[17]The relevant testimony is as follows:
Q. Did you give Trooper Zimmerman documents on June 4, 2011?
A. Yes.
Q. And I suppose tha tyou told him that, you know, these support my claims and what I'm telling you, this is for you to investigate with?
A. Yes.
Q. Did you tell him that any of those documents were confidential?
A. The ones I gave him on June the 4th--
Q. Yes, ma'am.
A. --were different than the other–than any other–No, I never–Just those documents. No, I didn't tell him they were confidential, no.
Q. Did you ever give Trooper Zimmerman a confidential document?

Even if Plaintiff could prove that Defendant leaked documents to Mr. Gamble, there can be no violation of Plaintiff's constitutional rights if the documents neither belonged, nor related, to Plaintiff. To sustain an access to the courts claim, "a plaintiff must demonstrate that the defendants'

---

A. No.

Q. Did you ever give Trooper Zimmerman confidential information?

A. Not that I can remember, so, no, I would say no–I would say no.

Q. Well, are you saying no or are you saying I don't remember?

A. No. I said--

Q. I'm sorry I need to press--

A. –I dn't remember, and then I said I would say no. Because I really can't remember, so–I probably didn't, so I would say I don't know. I'm not sure.

Q. So you don't remember giving Trooper Zimmerman any confidential documents or information at any time?

A. No, I don't remember if it was confidential. It was all regular as far as I can remember.

Q. And do you agree with–Are you willing to withdraw the allegation in your Complaint–and you can look at whatever you want before you answer this question. I'll give you all the time you need. If you say I'm not ready to answer that now, that's fine too. But are you willing to withdraw the allegation in your Complaint that Trooper Zimmerman leaked any confidential documents or information? Will you withdraw that allegation?

A. I would like to–That's a–That's a question, believe me. Because--

Q. That's what I thought.

A. Because later on things were leaked to Gamble.

Q. Yes, ma'am.

A. So I don't know if they came from Zimmerman--

Q. But–Back up. And I--

A. He's affiliated somehow along the line I would say.

Q. Hold on. I don't mean to stop you from saying anything you want to say. So again, if we're not done and I think we're done and I'm wrong, you tell me. But I need to clarify here. I think you just told me you don't remember giving Trooper Zimmerman any confidential information.

A. Uh-huh.

Q. And I'm wondering how it's possible then that Trooper Zimmerman leaked any confidential information if you didn't give it to him?

A. Well, I didn't give it to him.

Q. So who's--

A. Someone else surely did, not me.

Q. What precise confidential--

A. It was another–It's got something else to do with someone else. I can't speak for--

Q. Whose information was it?

A. I don't know. I'm not sure. I can't say. Do I have to say?

Q. Well--

A. Well, yeah, I can say if you want me to say.

Q. If you know, I would like for you to tell me what we're talking about here.

A. Dennis Givens, his statement that he made for a forgery.

Q. So it's your belief that Trooper Zimmerman leaked a statement that Dennis Givens gave him?

A. Uh-huh, yes.

actions foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had." *Pollard v. Pollard*, 325 F. App'x 270, 272 (4th Cir. 2009). Plaintiff cannot prevail on such a claim if the documents allegedly leaked related to someone else. Similarly, to prevail on a violation of privacy claim, Plaintiff must show that she had a legitimate expectation of privacy in the disclosed documents. *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996). While in some situations, a plaintiff may be able to prevail on a right of privacy claim even if the information is not directly provided by the plaintiff to the defendant, the information must still pertain to a personal matter about the plaintiff. *See Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (stating that the right to privacy protects "the individual's interest in avoiding disclosure of personal matters").

However, despite attaching over eighty pages of exhibits and affidavits to her opposition to the motion, Plaintiff offers no evidence showing that she provided Defendant with any confidential documents. Nor does Plaintiff come forward with any evidence showing that the documents Dennis Givens provided related to her or her pending state court case. In a section of her brief entitled "Counter Claims Stated by Defendant," Plaintiff states that she "DID NOT 'admit' that defendant Zimmerman did not leak any of her confidential information, as attested to by her affidavits and true statements; and results in word twisting by defendant's counsel." (emphasis in original). Plaintiff also claims that she "witnessed the events alleged against Defendants Zimmerman, and can produce eye-witness and expert testimony that argues for some doubt as to defendant Zimmerman's Memorandum, within the law." These unsupported, conclusory statements and allegations are simply not sufficient to overcome summary judgment. *Levine v. Smithtown Cent. Sch. Dist.*, 565 F. Supp. 2d 407, 419-20 (E.D.N.Y. 2008) ("The non-movant must present more than a "scintilla of evidence," or "some metaphysical doubt as to the material facts," and cannot rely on the allegations

in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible.") (internal citations omitted).

Only two of Plaintiff's affidavits contain any mention of anyone giving Defendant confidential information, and both affirm that it was Dennis Givens, and not Plaintiff, who gave Defendant the alleged confidential information. First, Dennis Givens states in an affidavit that he met with Defendant on May 3, 2011, in order to file a police report against Keith Gamble for forgery, uttering, and fraudulent schemes; and, on that date, he presented exhibits to Defendant in support of his allegations. Second, Greg Givens states in an affidavit that "[b]etween May 11, 2011 and July 22, 2011, it was uncovered that West Virginia State Police Officer J.C. Weaver otherwise leaked confidential internal investigative information, forensic police reports and information concerning Dennis Givens and Greg Givens, supplied in confidence to [Defendant], on or about May 3, 2011, to one Keith Christopher Gamble of Morgantown, West Virginia, as used in deposition involving Dennis A. Givens and Carol L. Gray Pizzuto...." Thus, instead of showing that there is a genuine dispute as to whether Plaintiff gave Defendant confidential information related to her case, Plaintiff's evidence actually shows that it was Dennis Givens, and not Plaintiff, who provided Defendant with confidential information and that it was Officer Weaver, and not Defendant, who leaked this information.

Rather than present evidence showing a genuine dispute of material fact, Plaintiff attempts to discredit Defendant's evidence by making unsupported allegations that her deposition testimony was coerced by Defendant's counsel or quoted out of context in Defendant's motion. However, as discussed above, Plaintiff offers no facts to support these shocking allegations of impropriety on Defendant's part. "[P]laintiff's bald assertion that defendants' evidence is fabricated does not create a triable issue unless plaintiff produces competent evidence that contradicts defendants' exhibits."

*Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 354 (D. Md. 2011); *see also Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). As one court put it: "Questions of this general sort often arise in cases where the party resisting summary judgment can muster no competent evidence to avoid it, yet wants to get to a jury in the hopes that the jury will disbelieve the evidence that the summary judgment movant has adduced." *Wilson v. Clancy*, 747 F.Supp. 1154, 1158 (D.Md.1990); *see also see Scott v. Harris*, 550 U.S. 372, 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Simply put, "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir. 1984).

Finally, Plaintiff asserts that Defendant's summary judgment motion is premature because "discovery is not yet complete" and because "no deposition of Defendant have had the opportunity to take place; relevant discovery has yet to be taken in related eye-witness testimonies relevant to similar defendant's acts or omissions relative to the present case." "Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson*, 477 U.S. at 250 n.5). Federal Rule of Civil Procedure 56(d), formerly Rule 56(f), provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to

a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Thus, "the non-moving party's duty to respond specifically to a summary judgment motion is expressly qualified by Rule 56[(d)]'s requirement that summary judgment be refused where the non-moving party has not had the opportunity to 'discover information that is essential to his opposition.' " *Strag v. Board of Trustees*, 55 F.3d 943, 953 (4th Cir.1995) (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995)).

In general, "a reference to Rule 56[(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[(d)] affidavit," and "the failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods*, 302 F.3d at 244. However, "the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature." *Leftridge v. Matthews*, 2013 WL 5467724 (D. Md. Sept. 30, 2013). Giving Plaintiff the full benefit of the doubt, the Court will construe Plaintiff's contentions as a Rule 56(d) affidavit seeking to engage in additional discovery.

"Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery." *Hamilton v. Mayor & City Council of Baltimore*, 807 F.Supp.2d 331, 342 (D.Md.2011) (internal quotations omitted). The nonmoving party must demonstrate that the summary judgment motion is clearly premature because she has not had an opportunity to discover "information that is essential to [her] opposition [of the motion]." *Harrods*, 302 F.3d at 244. Courts generally find that summary judgment is premature where the nonmoving party, through no fault of her own, has had little or no opportunity to conduct discovery. *See Webster v. Rumsfeld*, 156 Fed.Appx. 571, 577 (4th Cir. 2005); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922 (4th Cir.1995); *Strag,*

55 F.3d at 953. Additionally, when the issues involved are highly fact intensive, such as intent or motive, summary judgment may be inappropriate without more discovery. *Harrods*, 302 F.3d at 244. The denial of summary judgment on the grounds that more discovery is necessary may also be appropriate where the relevant facts are exclusively in control of the moving party. *See Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263-64 (4th Cir. 2005) (vacating the district court's grant of summary judgment prior to any discovery taking place because evidence of a material fact was "a matter wholly within the knowledge of [Defendant]"). However, in all cases, the party asserting a need to conduct additional discovery must "demonstrate that the evidence [she] seeks to discover will materially affect the outcome of [the] case." *Amirmokri v. Abraham*, 437 F.Supp.2d 414, 420 (D.Md. 2006); *Strag*, 55 F.3d at 954 ("The denial of a Rule 56(f) motion for extension should be affirmed where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."); *Webster v. Rumsfeld*, 156 Fed.Appx. 571, 577 (4th Cir. 2005) (holding that non-moving party failed to demonstrate the need to conduct *any* discovery in opposing a motion for summary judgment because the information sought "via the requested depositions is not relevant or necessary to the resolution of his breach of contract claim and would not create a genuine issue of material fact").

Here, although Plaintiff has not deposed Defendant, formal discovery in this case has been ongoing since September of 2013, and Plaintiff has had ample opportunity to serve other discovery requests upon Defendant. Additionally, as noted above, Plaintiff's failure to depose Defendant was not the fault of Defendant, but was solely due to her delay in responding to Defendant's discovery requests and her violation of this Court's previous discovery order. Moreover, while Plaintiff devotes the great majority of her brief on Defendant's alleged failure to reasonably investigate her allegations against Mr. Gamble, the sole question here is whether Plaintiff gave Defendant any

confidential information that he then improperly leaked to Mr. Gamble, which is a simple question of fact, not involving inquiry into Defendant's state of mind as to motive or intent.

Most significantly, Plaintiff provides no evidence that deposing Defendant, or conducting any other discovery for that matter, could create a genuine issue of material fact. Plaintiff simply makes generalized statements without pointing to any specific information she hopes to gain by conducting any further discovery. Plaintiff asserts that Defendant's deposition is necessary in order for Defendant to "account for his role in these events." She contends that "relevant discovery has yet to be taken" about similar defendant's acts or omissions. She ominously proclaims "Within this case buried, is a secret. The Defendant does not want this known." However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Here, the factual dispute at issue is whether Defendant ever obtained confidential documents from Plaintiff or pertaining to Plaintiff. Evidence of this fact is clearly within the knowledge of Plaintiff, and Plaintiff makes no effort to explain why deposing Defendant is necessary to show that this material fact is still in dispute. Accordingly, Plaintiff has failed to demonstrate how the additional discovery requested "would by itself creat[e] a genuine issue of material fact sufficient to defeat summary judgment." *Strag*, 55 F.3d at 954.

In sum, despite the wide latitude given by this Court and an ample opportunity to present some evidence in support of her vague allegations against Defendant, Plaintiff has not met her burden of showing that a genuine issue of fact exists such that this case should proceed any further to trial. While the Court is mindful that summary judgment should not be granted lightly before discovery is completed, a primary purpose of summary judgment is to "isolate and dispose" of meritless litigation. *Celotex,* 477 U.S. 317. The undersigned concludes, after a very careful and

thorough review of the record, that this case is meritless and that no amount of further discovery can generate any material factual disputes. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgement be **GRANTED**.

### E. Plaintiff's Motions to Strike Defendant's Replies (Docs. 186 & 187)

Plaintiff filed motions seeking to strike Defendant's replies to her responses to his motions. Specifically, Plaintiff filed a motion to strike Defendant's reply to her response to Defendant's motion for sanctions[18] and a motion to strike Defendant's reply to her response to Defendant's motion for sanctions.[19] In both motions, Plaintiff incorrectly states that the local rules of this Court prohibit Defendant from filing a reply brief. The local rules prohibit the filing of a surreply without first seeking leave of court. L.R.Civ.P. 7.02(b). However, Defendant's reply briefs are not surreplies. Although briefly stating this argument as the basis for the motions, Plaintiff's motions to strike *actually are* surreplies because they essential respond to Defendant's responses. This is the second time Plaintiff filed such a motion. The Court denied a similar motion seeking to strike properly filed reply memoranda by Order dated January 28, 2013.[20] In that order, the undersigned noted that "Plaintiff, as a *pro se* litigant is likely unfamiliar with motion practice," and specifically informed Plaintiff that the Local Rules provide for both response and reply memoranda. Thus, Plaintiff is aware that her motions to strike are improper, and the Court will not take into account her *pro se* status. Plaintiff's motions to strike are **DENIED**. Additionally, the Court will not consider the motions or the exhibits attached thereto because they amount to impermissible surreply memoranda.

### F. Plaintiff's Motions to Extend the Scheduling Order (Docs. 188 & 189)

---

[18]Dkt. No. 186.

[19]Dkt. No. 187.

[20]Dkt. No. 74.

Plaintiff filed two motions seeking to modify this Court's scheduling order. In light of the foregoing recommendation that Defendant's summary judgment motion be granted, the undersigned recommends that Plaintiff's motions be **DENIED AS MOOT**.

### G. Defendant's Motion for Sanctions (Doc. 172)

Defendant seeks sanctions against Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure and this Court's inherent authority. Defendant contends that sanctions are warranted because of Plaintiff's "malicious, vexations, and abusive litigation conduct." Specifically, Defendant asserts that Plaintiff filed a frivolous claim and persisted in litigating the claim even after admitting at her deposition that the events in her complaint did not occur. Additionally, Defendant contends that Plaintiff has misrepresented facts in numerous pleadings, left her deposition prior to completion, and misrepresented her deposition conduct to the Court. Defendant requests that the Court require (1) Plaintiff to pay all of his attorney fees and costs in this matter, or alternatively, the fees and costs incurred from November 19, 2013 (the date of her deposition), through the conclusion of this matter; and (2) a civil penalty in an amount deemed appropriate. Plaintiff responded to Defendant's motion by repeating her previous outlandish allegations of misconduct by Mr. Solomon and generally arguing that it is Defendant who deserves sanctions. Plaintiff even goes so far as to accuse Defendant and Mr. Solomon of stalking her or placing her on "around the clock surveillance." Plaintiff also devotes a substantial portion of her response restating her opposition to Defendant's motion for summary judgment.

Rule 11 sanctions are appropriate where pleadings are not grounded in fact or warranted by law and are brought to harass others. Although *pro se* parties are generally held to a more lenient standard than professional counsel, nothing prevents a court from imposing Rule 11 sanctions on a *pro se* litigant who has not complied with Rule 11. *Burnett v. Grattan*, 468 U.S. 42, 50 n. 13

(1984). Courts that have imposed sanctions against *pro se* parties frequently attach importance to the fact that the party had already been placed on notice that she was close to violating Rule 11. *See, e.g. Baasch v. Reyer*, 827 F.Supp. 940, 944 (E.D.N.Y.1993).

Here, the undersigned finds that the question of whether to impose sanctions on Plaintiff is an extremely close call under the circumstances. The Court agrees with Defendant that Plaintiff has repeatedly misrepresented facts in pleadings and affidavits, abused the discovery process, and filed frivolous and vexatious motions. Plaintiff's behavior has not only harmed Defendant, but also the federal taxpayer, and Rule 11 operates to deter such conduct. However, the Court believes that Plaintiff does not fully understand the effects of creating this litigation or the consequences of her misrepresentations and other reckless conduct. Additionally, the Court notes that it has not formally admonished Plaintiff regarding the imposition of sanctions. Finally, and most importantly, this Court granted the defendants' motion for prefiling restrictions against Plaintiff and the Givens as a sanction to deter future duplicitous and frivolous litigation.[21] While a *pro se* party should not have *carte blanche* to behave recklessly with no consequences, because summary judgment disposes of the case in Defendant's favor and because Plaintiff has already been sanctioned in this case such that she may no longer bring similar actions without prior court approval, this Court declines to further sanction Plaintiff. Accordingly, Defendant's motion for sanctions is **DENIED**.

### H. Plaintiff's Motion for Contempt of Court (Doc. 196)

Plaintiff filed a motion seeking to hold Defendant in contempt of court for failure to comply with this Court's November 1, 2013, discovery order directing him to provide Plaintiff with dates of availability for a deposition. As discussed above, the Court does not find that Defendant failed to comply with the discovery order because Plaintiff failed to complete her deposition as directed

---

[21]Dkt. No. 107.

by the order. Accordingly, Plaintiff's motion for contempt of court is **DENIED**.

## IV. CONCLUSION & RECOMMENDATION

Based on the foregoing:

(1) Plaintiff's Motions to Compel Defendant's Deposition (Docs. 157 & 174) are **DENIED**.

(2) Plaintiff's Motion to Strike Deposition Testimony (Doc. 158) is **DENIED**.

(3) The undersigned recommends that Plaintiff's Motion for Leave to Amend Complaint (Doc. 166) be **DENIED.**

(4) Plaintiff's Motion to Retain Experts (Doc. 169) is **DENIED**.

(5) Defendant's Motion to Strike (Doc. 177) is **DENIED**.

(6) The undersigned recommends that Defendant's Motion for Summary Judgment (Doc. 164) be **GRANTED**.

(7) Plaintiff's Motion to Strike Defendant's Reply to Response to Motion for Sanctions (Doc. 186) is **DENIED**.

(8) Plaintiff's Motion to Strike Defendant's Reply to Response to Motion for Summary Judgment (Doc. 187) is **DENIED**.

(9) The undersigned recommends that Plaintiff's Motion to Amend the Scheduling Order (Doc. 188) and Plaintiff's Motion to Extend Deadlines (Doc. 189) be **DENIED AS MOOT**.

(10) Defendant's Motion for Sanctions (Doc. 172) is **DENIED**.

(11) Plaintiff's Motion for Contempt (Doc. 196) is **DENIED**.

Any party may, within fourteen [14] days of the filing of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver

of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to mail a copy of this Order to the *pro se*, certified mail return receipt requested, and any counsel of record, as applicable.

**IT IS SO ORDERED**

DATED: April 23, 2014

/s/ *James E. Seibert*

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE